United States District Court
Southern District of Texas
**ENTERED**
August 16, 2018
David J. Bradley, Clerk

ATOM Instrument Corporation, et al., §
        Plaintiffs, §

versus §        Civil Action H-12-1811

Petroleum Analyzer Company, L.P., §
        Defendant. §

## Findings and Conclusions

1. *Background.*

Franek Olstowski worked for Petroleum Analyzer Company, L.P., before becoming president and part-owner of ATOM Instrument Corporation.

ATOM and Petroleum develop, manufacture, and repair instruments for chemical analysis of hydrocarbons. In 2002, while working as a consultant for Petroleum, Olstowski developed an excimer light source to detect sulfur using ultraviolet fluorescence. He did this separately from his work at Petroleum. In 2003 and 2005, under a non-disclosure agreement, Petroleum and he talked about licensing his technology but did not reach an agreement. Olstowski was awarded a patent in 2007.

Excimer is short for excited dimer. It is a combination of a noble gas and a reactive gas that produces ultraviolet light when excited by electricity. Possible combinations include krypton and chloride, xenon and chloride, and xenon and bromine. An excimer detects, in this case, sulfur by making it glow. Like an excimer, zinc or cadmium can be used as a source of ultraviolet light.

In 2006, Petroleum sued ATOM and Olstowski in Texas state court, claiming ownership of the excimer technology. In their contract, Olstowski and Petroleum had agreed to arbitrate, so the court sent them to do that. The arbitration panel awarded Olstowski ownership of all the technology. It also held

that it is his trade secret. The panel enjoined Petroleum from claiming or using the technology. The trial court and the court of appeals confirmed the award. The panel, the trial court, the court of appeals, and this court have decided that Olstowski's technology is a trade secret because in their contracts, Olstowski and Petroleum had agreed that Petroleum would not disclose or use it.

In November of 2009, Petroleum started selling an instrument called "MultiTek." While appealing the confirmation, Petroleum stipulated that the MultiTek device used an excimer light source to detect sulfur using ultraviolet fluorescence. Petroleum argued that the injunction did not prohibit its use.

On realizing that Petroleum was selling a device that used an excimer light source to detect sulfur using ultraviolet fluorescence, ATOM and Olstowski filed several motions in the trial court. That court denied their motion for contempt and sanctions in February of 2011 and granted Petroleum's motion for a protective order in June. In October, it granted and denied in part a motion to enforce the injunction, explaining that the meaning of Olstowski's technology was the same as it had been in arbitration but not deciding whether the MultiTek used his technology. It denied ATOM and Olstowski's amended motion to enforce and motion for sanctions in December. By that time, the issue had become moot. By November of 2011, Petroleum had begun using a zinc lamp instead of an excimer lamp in its MultiTek.

The question in this case is whether Petroleum used Olstowski's technology in its MultiTek products that it sold between November 2009 and October 2011.

2.  *Jurisdiction.*

This case began as an adversary action in ATOM's bankruptcy. In April of 2012, this court withdrew the reference. The bankruptcy plan was confirmed in November of 2012. Because this action was pending before the plan was confirmed, this court retains jurisdiction.[1]

---

[1] *See In re Enron Corp. Sec.*, 535 F.3d 325 (5th Cir. 2008).

3. *Analysis.*

   A. *Scope.*

Olstowski's technology is the technology defined by the arbitration panel in its conclusion of law paragraph 5:

> a. the technology and methods embodied in the patent applications styled "Improved Ozone Generator with Dual Dielectric Barrier Discharge," "Improved Closed-Loop Light Intensity Control and Related Fluorescence Application Method," and "Excimer UV Fluorescence Detection";
>
> b. all of the accompanying drawings, blueprints, schematics, and formulae created or drawn by either Franek Olstowski or Virgil Stamps of the application identified in or in support of items (A) and (B); and
>
> c. issued patents or patent applications pending, entitled "Ozone Generator with Dual Dielectric Barrier Discharge and Methods for Using Same," "Improved Closed-Loop Light Intensity Control and Related Fluorescence Application Method," and "Excimer UV Fluorescence Detection" (as amended).

ATOM and Olstowski frequently claim that Olstowski's technology is any device using an excimer light source that uses krypton-chloride specifically to measure sulfur using ultraviolet fluorescence. That does not define the technology but rather describes its function. ATOM and Olstowski say that this is not a patent case but a trade secret case. That is true, but in this case, the trade

secret is the manifestation of Olstowski's idea that is contained in the patents and patent applications described by the arbitration award.

The scope of Olstowski's technology is neither as broad nor as narrow as the parties argue. It is not all excimer light sources to detect sulfur using ultraviolet fluorescence, nor is it only the excimer lamps he made. It is exactly what the panel says it is. The only question for the court is whether the MultiTek used what the panel decided was Olstowski's technology.

### B. MultiTek.

The MultiTek used an excimer lamp that Petroleum purchased from Heraeus Noblelight, LLC. It differs in several ways from Olstowksi's lamp. It has a hollow, cylindrical inner electrode made from a spiral of polished aluminum and does not include an emission aperture. Olstowski's excimer lamp has an inner electrode made from a solid rod of conductive metal, and it has an emission aperture at the end of a quartz envelope. Both lamps use some mixture of krypton and chloride gases, emitting a wavelength of 222 nanometers. Olstowski never disclosed the proportion of the gases that he used, so whether the two lamps use the same mixture is unknown, eliminating this element.

### C. Use.

ATOM and Olstowski have not proved that the MultiTek used Olstowski's technology. They argue that the inclusion of the patent applications in the arbitration award's definition of Olstowski's technology means that it includes all excimer lamps to detect sulfur using ultraviolet fluorescence; however, much of the general description of excimer-lamp technology in his patent applications can be found in other sources. Earlier scientific articles and patents disclose descriptions of how to use excimer technoloy to detect sulfur. What ATOM and Olstowski have shown is that Petroleum used an excimer lamp to detect sulfur using ultraviolet fluorescence. Petroleum agrees. What they have not shown is that the MultiTek's excimer lamp was sufficiently similar to Olstowski's excimer lamp to be his technology.

The patent office rejected of much of Petroleum's patent application for an excimer lamp using a closed-loop system because of Olstowski's technology. ATOM and Olstowski say that means that the MultiTek contained his technology. Petroleum filed that application in August of 2011, nearly two years after it had started using an excimer lamp in the MultiTek and a couple of months before it would stop using it. Also, Petroleum did not use a lamp of its own creation – it bought one from Heraeus.

Petroleum talked first with a company called Ushio about getting an excimer lamp from it, then with Heraeus. It decided to order from Heraeus, which already had a lamp similar to what it wanted. Petroleum gave Heraeus the physical dimensions that the lamp had to meet and asked that it emit a wavelength of 222 nanometers.

Petroleum set up a design team to work with Heraeus on the lamp. It included people who either had not worked with Olstowski on excimer lamp technology while he was at Petroleum or did not start working at Petroleum until after Olstowski had left. Sean Rick was in charge of the team. He knew of Olstowski's technology but was not part of the design team's substantive work.

Petroleum did not use Olstowski's technology in its development of the lamp.[2] Heraeus created the lamp using its excimer technology. Petroleum simply tested Heraeus's prototype and asked for physical alterations and a particular emission wavelength. Heraeus tailored the lamp to fit Petroleum's requests.

Olstowski's technology and the MultiTek are different in structure. The MultiTek's inner electrode is hollow – an aluminum spiral. Olstowski's is solid – a rod of some conductive metal. The MultiTek does not have an emission aperture; Olstowski's does. The emission aperture concentrates the output. Not having one allows the maximum output. Both lamps use krypton and chloride in some proportion. Whether they use those gases in the same proportion is unknown, because Olstowski did not tell Petroleum what ratio of krypton and chloride he used.

---

[2] See *Wellogix, Inc., v. Accenture, L.L.P.*, 716 F.3d 867 (5th Cir. 2013).

3. *Conclusion.*

Petroleum did not use Olstowski's technology in its MultiTek. Franek Olstowski and ATOM Instrument Corporation take nothing from Petroleum Analyzer Company, L.P.

Signed on August 16, 2018, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge