IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Courts
Southern District of Texas
FILED
September 24, 2020
David J. Bradley, Clerk of Court

United States Court of Appeals
Fifth Circuit
FILED
August 7, 2020
Lyle W. Cayce
Clerk

No. 19-20151

Consolidated with: 19-20371

In the Matter of: ATOM INSTRUMENT CORPORATION, doing business as Excitron Corporation,

   Debtor

ATOM INSTRUMENT CORPORATION, doing business as Excitron Corporation; FRANEK OLSTOWSKI,

   Plaintiffs - Appellants

v.

PETROLEUM ANALYZER COMPANY, L.P.,

   Defendant - Appellee

---

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-1811

---

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

  The plaintiff corporation filed for bankruptcy. It brought an adversarial proceeding against a former employer of the founder of the bankrupt, claiming misappropriation of trade secrets, unfair competition, and civil theft. The district court withdrew the reference to the bankruptcy court, held a bench trial, and entered a take-nothing judgment. The court also awarded attorneys'

No. 19-20151 c/w No. 19-20371

fees to the defendant. We AFFIRM the judgment and fee award, and we REMAND to allow the district court to make the initial determination and award of appellate attorneys' fees to Petroleum Analyzer.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Franek Olstowski once worked for the defendant Petroleum Analyzer Co., L.P., where he was a research and development consultant. While working there in 2002, Olstowski developed an excimer lamp using krypton-chloride to detect sulfur with ultraviolet fluorescence. There is no dispute that Olstowski developed the technology on his own time and in his own laboratory, but he also performed tests and generated data for the technology using Petroleum Analyzer resources. In 2003, and again in 2005, Olstowski and Petroleum Analyzer entered into non-disclosure agreements regarding the technology. The parties never were able to agree on licensing. During the period of the discussions, Olstowski applied for a patent for his technology, then twice amended it. The Patent and Trademark Office rejected his first application and his first amendment but accepted his second amended application. ATOM Instrument Corp. was started in 2004 by Olstowski to assist him in the failed licensing discussions with Petroleum Analyzer.

In 2006, Petroleum Analyzer filed a lawsuit in the 269th District Court of Harris County, Texas, seeking a declaratory judgment that Petroleum Analyzer is the owner of the technology Olstowski developed. The state court ordered the claims to arbitration because the 2005 non-disclosure/non-use agreement contained an arbitration clause. The arbitration panel declared that Olstowski is the owner of:

    a.    the technology and methods embodied in the patent applications styled "Improved Ozone Generator with Duel Dielectric Barrier Discharge," Improved Close-Loop Light

2

No. 19-20151 c/w No. 19-20371

Intensity Control and Related Fluorescence Application Method;" and "Excimer UV Fluorescence Detection";

b. all of the accompanying drawings, blueprints, schematics and formulas created or drawn by either Olstowski or Virgil Stamps of the application identified in or in support of ((a) and (b) hereinafter referred to as the "Excimer Technology"); and

c. Issued Patents and/or Patent Applications pending entitled: Ozone Generator with Dual Dielectric Barrier Discharge and Methods for Using Same, Improved Closed-Loop Light Intensity Control and Related Fluorescence Application Method, and Excimer UV Fluorescence Detection (as amended).

The panel also concluded that the "[t]echnology and intellectual property embodied within the technology set forth in paragraph 5 (a)–(c) above are trade secrets of Olstowski." Accordingly, the panel enjoined Petroleum Analyzer from claiming or using the technology. On November 6, 2007, the state court confirmed the arbitral award. A Texas appellate court upheld the confirmation order. *Petroleum Analyzer Co. v. Olstowski*, No. 01-09-00076-CV, 2010 WL 2789016, at *1 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.).

In 2009, Petroleum Analyzer partnered with a German company to develop its own sulfur-detecting excimer lamp called a MultiTek, which also used krypton-chloride to detect sulfur with ultraviolet fluorescence. Petroleum Analyzer manufactured and sold the MultiTek between November 2009 and October 2011.

In December 2010, upon learning that Petroleum Analyzer was selling the MultiTek, Olstowski and ATOM filed a motion in state court to hold Petroleum Analyzer in contempt because Petroleum Analyzer violated the order enjoining it from using Olstowski's technology. Petroleum Analyzer responded that the confirmation order had ambiguously defined the technology

3

that Petroleum Analyzer was enjoined from using. In August 2011, Olstowski and ATOM again moved to enforce the injunction, and in December 2011 they filed a second contempt motion. The state court granted the motion in part merely to clarify the meaning of the confirmation order. The state court concluded that the phrase "technology developed by Olstowski" as used in the confirmation order "means technology using an excimer light source that uses Krypton-Chloride specifically to measure sulfur using ultraviolet fluorescence." The state court, though, denied the contempt motion due to mootness: Petroleum Analyzer had ceased selling the MultiTek sometime between September and October of 2011. Significantly, the state court never decided whether Petroleum Analyzer's MultiTek used Olstowski's technology as defined by the arbitration panel and confirmation award.

In February 2012, ATOM filed for bankruptcy under Chapter 11 of the Bankruptcy Code. Two months later, Olstowski and ATOM initiated an adversary proceeding against Petroleum Analyzer, in which they alleged misappropriation of trade secrets, unfair competition, and civil theft. On the bankruptcy court's recommendation, the district court withdrew the reference to the bankruptcy court and asserted jurisdiction under 28 U.S.C. § 1334. In August 2014, the district court entered partial summary judgment for Olstowski and ATOM, holding that Petroleum Analyzer "will be liable for using the trade secrets of Franek Olstowski and ATOM Instrument, LCC, if it used his technology in its MultiTek."

Four years later, the district court held a six-hour bench trial to determine if Petroleum Analyzer had used any of Olstowski's protected technology. The court entered a judgment in favor of Petroleum Analyzer and later awarded attorneys' fees to Petroleum Analyzer.

Olstowski and ATOM filed two appeals, which we have consolidated. In one, they argue the district court made a legal error in holding that Petroleum

4

Analyzer did not use Olstowski's technology. In the other, they challenge the district court's award of attorneys' fees to Petroleum Analyzer.

## DISCUSSION

Olstowski and ATOM argue the district court made two errors: (1) finding that Petroleum Analyzer did not use Olstowski's trade secrets in Petroleum Analyzer's MultiTek and (2) awarding Petroleum Analyzer attorneys' fees under the Texas Theft Liability Act. We consider the issues in that order.

*I.     Whether Petroleum Analyzer used Olstowski's technology*

Because this "appeal requires the review of the district court's ruling following a bench trial, we review the district court's findings of fact for clear error and legal issues *de novo*." *Texas Capital Bank N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.)*, 846 F.3d 112, 127 (5th Cir. 2017). "We will reverse under the clearly erroneous standard only if we have a definite and firm conviction that a mistake has been committed." *Id.* (quotation marks omitted). "If the district court made a legal error that affected its factual findings, remand is the proper course unless the record permits only one resolution of the factual issue." *Id.* (quotation marks omitted).

The district court's findings and conclusions primarily addressed "whether the MultiTek used what the panel decided was Olstowski's technology." The district court rejected Olstowski and ATOM's assertion "that Olstowski's technology is any device using an excimer light source that uses krypton-chloride specifically to measure sulfur using ultraviolet fluorescence," reasoning that the use of krypton-chloride "does not define the technology but rather describes its function." The district court found that Olstowski and

No. 19-20151 c/w No. 19-20371

ATOM failed to show "the MultiTek's excimer lamp was sufficiently similar to Olstowski's excimer lamp to be his technology."

In explaining that there was insufficient similarity between the MultiTek and Olstowski's technology, the district court focused on three contrasting physical characteristics of the two excimer lamps:

> The MultiTek's inner electrode is hollow — an aluminum spiral. Olstowski's is solid — a rod of some conductive metal. The MultiTek does not have an emission aperture; Olstowski's does. The emission aperture concentrates the output. Not having one allows the maximum output. Both lamps use krypton and chloride in some proportion. Whether they use those gases in the same proportion is unknown, because Olstowski did not tell Petroleum Analyzer what ratio of krypton and chloride he used.

Accordingly, the district court found that "Petroleum Analyzer did not use Olstowski's technology in its MultiTek."

Olstowski and ATOM first argue that the district court made a legal error by misconstruing what the arbitration panel declared Olstowski's trade secrets included. A proper construction of the arbitration panel's award, they argue, would indicate that the three physical differences highlighted by the district court are irrelevant as a matter of law. According to the arbitration panel's award, Olstowski's trade secrets include the "the technology and methods embodied in the patent applications styled ... 'Excimer UV Fluorescence Detection.'" Olstowski and ATOM contend that patent application does not narrowly limit Olstowski's protected technology to any specific structural details. Thus, the structural differences in Olstowski's and Petroleum Analyzer's technology are irrelevant. According to Olstowski and ATOM, the only relevant comparison is Petroleum Analyzer's use of krypton-chloride in its MultiTek. Further, they assert the use of krypton-chloride is not merely a function of Olstowski's protected technology as the district court found. Instead, it is a method protected by the panel's trade-secret award.

6

No. 19-20151 c/w No. 19-20371

Olstowski and ATOM base their entire case on Petroleum Analyzer's use of krypton-chloride in the MultiTek. Further, because of the backdrop of the arbitration panel's decision, they argue that what might otherwise look like a factual issue on the technology is actually a legal issue of interpretation of the panel decision. As they surely realize, it is difficult to argue that a legal question is posed when asking whether one company used another's protected technology. We examine the argument to see if overcomes our doubts.

The arbitration panel stated that the technology described in Olstowski's patents is a trade secret. To be sure, the words "krypton" and "chloride" appear in the panel decision. Yet it was unclear to the district court, as it is unclear to us, how a gas and a chemical compound commonly used in lamps and lasers can be a trade secret. Olstowski and ATOM could have provided expert testimony to show how the use of krypton-chloride is so unique to their device as to make it an integral part of their protected trade secret as opposed to a generic concept of physics, which is unprotected. They did not. The two witnesses they did call merely testified that Petroleum Analyzer's MultiTek used krypton-chloride, a fact Petroleum Analyzer does not contest.

We conclude that Olstowski and ATOM's proclaimed legal issue is indeed a factual one, and that they failed to carry their burden of proof at trial. On this record, we cannot say that the district court's finding of fact was clearly erroneous.

Olstowski and ATOM also argue that the district court's decision disregards the "law of the case," which would be another means to transform resolution of this appeal into primarily a question of law. They contend that the state district and appellate courts confirmed the arbitration panel's award of Olstowski's trade secret, and that the state district court clarified the confirmation order's description of the technology to include the use of krypton-chloride. According to Olstowski and ATOM, the federal district court's

7

judgment improperly altered the plain meaning of the previous orders. We find, first, that neither the arbitration panel award nor the state clarification order explicitly stated that the use of krypton-chloride itself was a protected trade secret. Second, ATOM and Olstowski asked the district court to "make a ruling . . . defining what technology in dispute belongs to [them], to the exclusion of" Petroleum Analyzer. The district court did so by a decision that did not deviate from the arbitration panel award or any other order. In fact, the district court stated that the arbitration panel award's description of Olstowski's technology remained in effect.

The district court did not ignore the "law of the case."

## II.   Attorneys' fees

After the district court entered its judgment on the merits of this dispute, Petroleum Analyzer moved for an award of attorneys' fees under the Texas Theft Liability Act ("TTLA"). The Act states: "Each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." TEXAS CIV. PRAC. & REM. CODE ANN. § 134.005(b). In April 2019, the district court awarded Petroleum Analyzer $1,319,260.78 in attorneys' fees. Olstowski and ATOM timely appealed.

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). In reviewing an award of attorneys' fees, we apply an abuse of discretion standard. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 (5th Cir. 2013). That means clear error review of fact findings and *de novo* review of legal conclusions. *Id.* One question before us is the need to segregate attorneys' fees. That is a question of law; the extent to which certain claims can or cannot be segregated is a

mixed question of law and fact. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312–13 (Tex. 2006).

Olstowski and ATOM argue that the district court erred in failing to segregate Petroleum Analyzer's fees that were not related to Petroleum Analyzer's defense of their claim under the TTLA. Texas law requires that "[i]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Id.* at 313. The Texas Supreme Court explained: "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. For example, where segregation is required, attorneys are not required to "keep separate time records when they drafted the fraud, contract, or DTPA paragraphs of [the] petition." *Id.* at 314. One way to present the facts is for counsel to estimate, "for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim." *Id.*

> Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, *voir dire* of the jury, *and a host of other services* may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.

*Id.* at 313 (emphasis added). "To meet a party's burden to segregate its attorney's fees, it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours" related to claims for which fees are not recoverable. *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 202 (Tex. App.—Dallas 2013, pet. denied) (alteration and quotation marks omitted).

As an example of a failure to segregate, Olstowski and ATOM identify billing entries for work totaling $3,498 that occurred two days prior to their

9

first assertion of a claim under the TTLA. They say that these entries could not have been related to litigation of that claim since they had yet to make the particular claim. The total $3,498 amount should have been removed, they argue, not just the lesser portion that the district court did segregate. Another set of disputed billings relates to an adversary proceeding regarding two patents allegedly unrelated to the excimer technology dispute. Olstowski and ATOM contend that "numerous tasks" billed "potentially for tens of thousands" of dollars in the unrelated patent dispute were not segregated out by the district court.

Petroleum Analyzer responds in two ways: it contends that these arguments were not timely made in the district court and, regardless, the work that is said to be unrelated to the judgment here was clearly related. Regarding possible waiver of the issue, there was a challenge to the fees in the district court on the basis that segregation of work was required. Though the argument was not presented in any detail beyond the portion of the billing entries totaling $3,498 that is contested, we conclude the district court addressed the issue of dividing the fees among different aspects of the overall dispute and the issues were not waived.

We find no error as to the billing entries totaling $3,498 used as an example of the need for segregating the billings. Though the fees were billed for work done via mediation prior to the TTLA claims being filed, the work advanced Petroleum Analyzer's attempt to resolve a threatened claim under the TTLA.

Olstowski and ATOM's more general claim about error in the award of fees is that legal work on different aspects of the dispute among the parties involved different patents and different proceedings, some in bankruptcy court and some before the district court after the referral was withdrawn. The district court considered this argument and concluded it was both difficult and

No. 19-20151 c/w No. 19-20371

unnecessary to divide the fees, because the subsets of claims were too interrelated. The court's finding, it seems to us, was that none of the "attorney's fees relate solely to a claim for which such fees are unrecoverable," *Chapa*, 212 S.W.3d at 313, and thus there was no need to segregate.

The district court's interaction with counsel at the hearing on attorneys' fees is the best indicator of the findings on this point.

> THE COURT: Counsel, suggest to me how having pleaded these two legal theories that ATOM would segregate its fees had it won on just one of them.
>
> MR. JOSEPH (counsel for ATOM): Well, we would have had to have gone through and looked at the time we spent pleading Theft Liability Act, the different interrogatories and requests for production we sent.
>
> THE COURT: But they are not different. You did the same thing in prosecuting both claims as you would have done if you only had one of them.

It seems to us that the court was saying that these "discrete legal services advance[d] both a recoverable and unrecoverable claim," meaning they did not need to be segregated. *Id.* at 313–14. Soon after that discussion, ATOM's counsel stated what in his view was necessary in this kind of case:

> MR. JOSEPH: The methodology [employed by Petroleum Analyzer] is not incorrect. What you do is, like I said, you have to go back and go through your time. And, yes, it's a tedious task to go through your time and look at how many paragraphs of your petition went to this claim versus all the other claims and how much discovery was specifically for this recoverable claim and the other one.

The district court was not convinced that in this case, such segregation could be accomplished.

> THE COURT: But there is no way to divide this up. The same proof would have upheld either one of those claims by itself; and by choosing to be redundant, ATOM cannot reduce the attorneys fees that it took to prepare this case.

11

No. 19-20151 c/w No. 19-20371

We see no failure by the district court to understand how the TTLA works on awarding attorneys' fees. Whether and to what extent legal fees can be segregated is a mixed question of law and fact. *Chapa*, 212 S.W.3d at 313. We find neither clear factual error nor legal error under *de novo* review.

Last, Petroleum Analyzer seeks remand of this case for the district court to award Petroleum Analyzer appellate attorneys' fees.[1] Under Texas law, if a party is entitled to recover attorneys' fees in the trial court, the party is also entitled to attorneys' fees after successfully defending on appeal. *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003) (citing *Gunter v. Bailey*, 808 S.W.2d 163, 166 (Tex. App.—El Paso 1991, no writ)). Olstowski and ATOM contend that Petroleum Analyzer waived the right to recover appellate attorneys' fees under Texas law because Petroleum Analyzer "failed to request or prove contingent appellate fees" in the original trial.

The Texas Supreme Court has held that a Texas court of civil appeals does not have jurisdiction to initiate an award of appellate attorneys' fees because "the award of any attorney fee is a fact issue which must [first] be passed upon the trial court." *International Sec. Life Ins. Co. v. Spray*, 468 S.W.2d 347, 349 (Tex. 1971). In Texas state courts, requesting appellate fees at the original trial is a placeholder requirement to ensure the state trial courts maintain jurisdiction over the issue. *Varner v. Cardenas*, 218 S.W.3d 68, 69–70 (Tex. 2007). Those are procedural rules that do not apply in federal court.

Our local rules provide for appellate litigants to petition this court for appellate attorneys' fees. *See* 5TH CIR. R. 47.8. Local Rule 47.8 does not require a party seeking appellate attorneys' fees to first request appellate attorneys' fees in the district court as a placeholder. *See Marston v. Red River Levee &*

---

[1] Though we acknowledge that Petroleum Analyzer's request for appellate attorneys' fees was made in its appellee brief, we treat this request as a petition.

*Drainage Dist.*, 632 F.2d 466, 467–68 (5th Cir. 1980) (awarding appellate attorneys' fees first requested on appeal).

We AFFIRM the judgment and trial fee award. We REMAND to allow the district court to make the initial determination and award of appellate attorneys' fees to Petroleum Analyzer.